# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| Plaintiff, | : | Case No.   2:19-cv-1781 |
| | : | |
| v. | : | |
| | : | |
| **TEN THOUSAND THREE HUNDRED FIFTY-FIVE AND 00/100 DOLLARS ($10,355.00) IN UNITED STATES CURRENCY,** | : | **VERIFIED COMPLAINT FOR FORFEITURE IN REM** |
| | : | |
| Defendant 1, | : | |
| | : | |
| **SEVEN HUNDRED FIFTY-SEVEN AND 00/100 DOLLARS ($757.00) IN UNITED STATES CURRENCY,** | : | |
| | : | |
| Defendant 2, | : | |
| | : | |
| **EIGHTEEN THOUSAND SIX HUNDRED FIFTY AND 00/100 DOLLARS ($18,650.00) IN UNITED STATES CURRENCY,** | : | |
| | : | |
| Defendant 3, | : | |
| | : | |
| **$50,624.75 FROM US BANK GOLD BUSINESS CHECKING ACCOUNT NO. XXXX1260, HELD IN THE NAME OF HASSAN NURISO DBA TOWFIG MARKET, LLC,** | : | |
| | : | |
| Defendant 4, | : | |
| | : | |
| and | : | |
| | : | |
| **$164,594.47 FROM FIRST MERCHANTS BANK BUSINESS CHECKING ACCOUNT NO. XXXX0003, HELD IN THE NAME OF TOWFIQ MARKET, LLC,** | : | |
| | : | |
| Defendant 5. | : | |

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendants in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

**NATURE OF THE ACTION**

1. This is a civil action *in rem* brought to enforce 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture to the United States of:

> Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section . . . 1029 . . . of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense;

and/or 7 U.S.C. § 2024(e), which provides, in pertinent part:

> The Secretary may subject to forfeiture and denial of property rights any nonfood items, moneys, negotiable instruments, securities, or other things of value that are furnished by any person in exchange for benefits, or anything of value obtained by use of an access device, in any manner contrary to [Chapter 51] or the regulations issued under this chapter.

2. The term "specified unlawful activity" means, in relevant part, an offense under 18 U.S.C. § 641 (theft of public money), an offense under 7 U.S.C. § 2024(c) (presentation for payment or redemption of benefits that have been illegally received, transferred, or used), as provided by 18 U.S.C. § 1956(c)(7)(D); and any act or activity constituting an offense under 18 U.S.C. § 1029 (fraud in connection with access devices), as set forth in 18 U.S.C. § 1961(1)(B) and incorporated by 18 U.S.C. § 1956(c)(7)(A).

**THE DEFENDANTS IN REM**

3. Defendant 1 is Ten Thousand Three Hundred Fifty-Five and 00/100 Dollars ($10,355.00) in United States currency. On or about November 9, 2018, agents of the United States Department of Agriculture, Office of Inspector General ("USDA-OIG") and the Federal

Bureau of Investigation ("FBI") seized Defendant 1 from Towfiq Market located at 3655 Sullivant Avenue, Columbus, Ohio, pursuant to a federal search and seizure warrant (Case No. 2:18-mj-828). On or about November 14, 2018, the designated agent of the United States Marshals Service ("USMS") deposited Defendant 1 into the Seized Asset Deposit Fund where it will remain during the pendency of this action.

4. Defendant 2 is Seven Hundred Fifty-Seven and 00/100 Dollars ($757.00) in United States currency. On or about November 9, 2018, agents of the USDA-OIG and the FBI seized Defendant 2 from the residence located at 1772 Doe Run, Columbus, Ohio, pursuant to a federal search and seizure warrant (Case No. 2:18-mj-827). On or about November 14, 2018, the designated agent of the USMS deposited Defendant 2 into the Seized Asset Deposit Fund where it will remain during the pendency of this action.

5. Defendant 3 is Eighteen Thousand Six Hundred Fifty and 00/100 Dollars ($18,650.00) in United States currency. On or about November 9, 2018, agents of the USDA-OIG and the FBI seized Defendant 3 from the residence located at 3569 Quickwater Road, Grove City, Ohio, pursuant to a federal search and seizure warrant (Case No. 2:18-mj-830). On or about November 14, 2018, the designated agent of the USMS deposited Defendant 3 into the Seized Asset Deposit Fund where it will remain during the pendency of this action.

6. Defendant 4 is $50,624.75 from US Bank Gold Business Checking Account Number xxxx1260, held in the name of Hassan Nuriso dba Towfig Market, LLC. On or about November 9, 2018, agents of the USDA-OIG and the FBI seized Defendant 4 pursuant to a federal seizure warrant (Case No. 2:18-mj-829). On or about December 14, 2018, the designated agent of the USMS deposited Defendant 4 into the Seized Asset Deposit Fund where it will remain during the pendency of this action.

7. Defendant 5 is $164,594.47 from First Merchants Bank Business Checking Account Number xxxx0003, held in the name of Towfiq Market, LLC. On or about November 9, 2018, agents of the USDA-OIG and the FBI seized Defendant 5 pursuant to a federal seizure warrant (Case No. 2:18-mj-825). On or about December 14, 2018, the designated agent of the USMS deposited Defendant 5 into the Seized Asset Deposit Fund where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

8. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendants under 18 U.S.C. § 981(a)(1)(C) and/or 7 U.S.C. § 2024(e). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

9. This Court has *in rem* jurisdiction over the defendants under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio and pursuant to 28 U.S.C. § 1395 because the defendants were found in the Southern District of Ohio.

## BASIS FOR FORFEITURE

11. The defendants are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) because they constitute or are derived from proceeds traceable to one or more violations of 18 U.S.C. § 1029 and/or an offense constituting specified unlawful activity, said activity being violations of 18 U.S.C. § 641, 7 U.S.C. § 2024(c), and/or a conspiracy to commit such offenses, in violation of 18 U.S.C. § 371.

12. The defendants are subject to forfeiture under 7 U.S.C. § 2024(e) because they represent nonfood items, moneys, negotiable instruments, securities, or other things of value that were furnished in exchange for SNAP benefits, or anything of value obtained by use of an access device in violation of 7 U.S.C. § 2024(c).

13. To the extent that it is necessary to do so, the United States intends to rely on the provisions of 18 U.S.C. § 984 to establish that Defendants 4 and 5 are subject to forfeiture.

**FACTS**

14. In late 2010, the USDA-OIG began investigating Towfiq Market (also known as Towfig Market and/or Towfiq Market, LLC, hereinafter "Towfiq Market"), which is a business operating in the Southern District of Ohio, for violations of 18 U.S.C. § 641 (theft of public money), 18 U.S.C. § 1029 (fraud in connection with access device), and 7 U.S.C. § 2024(c) (presentation for payment of redemption of benefits that have been illegally received, transferred or used), related to the acceptance and reimbursement of "food stamps" at Towfiq Market.

15. In or about December 2006, Towfiq Market opened as a grocery at 3655 Sullivant Avenue in Columbus, Ohio. Towfiq Market is owned and operated by brothers Abdurahim Nuriso and Hassan Nuriso.

16. On or about February 26, 2007, Hassan Nuriso submitted a "Food Stamp Program Application for Stores" to the USDA's Food and Nutrition Service ("USDA-FNS") on behalf of Towfiq Market. The application listed Hassan Nuriso as the owner of the business. On or about March 12, 2007, the USDA-FNS authorized Towfiq Market to participate in the Food Stamp Program and assigned Food Stamp Authorization Number xxxx0730 to the market.

17. As part of the application process for Towfiq Market, Hassan Nuriso certified, among other things, that:

5

      a.      He would follow, and ensure his employees followed, the SNAP regulations;

      b.      He was aware that violations of the SNAP rules could result in fines, legal sanctions, withdrawal or disqualification from the SNAP; and

      c.      He accepted responsibility on behalf of Towfiq Market for violations of the SNAP regulations, including, but not limited to:

           i.      trading cash for SNAP benefits,

           ii.      accepting SNAP benefits from people not authorized to use them,

           iii.      accepting SNAP benefits as payments on credit accounts or loans, and

           iv.      accepting SNAP benefits as payment for ineligible items.

**A.**    **Food Stamp Program**

18.    The Food Stamp Program is a federally funded program administered by the USDA and managed through the USDA-FNS in each state. *See* 7 C.F.R. § 271.3. Food stamp benefits are similar to United States currency in that benefit recipients can purchase authorized products from authorized retailers at the face value in exchange for the food stamp benefit payment.

19.    As of October 1, 2008, the official name of the federal Food Stamp Program changed to the Supplemental Nutrition Assistance Program ("SNAP"). The terms for the program and related benefits are used interchangeably and are commonly referred to as the "Food Stamp Program," "food stamp benefits," and "SNAP."

20.    Pursuant to 7 C.F.R. § 278.2, retail stores may participate in the SNAP only with the authorization of USDA-FNS. Authorized participants in the SNAP may only accept and redeem food stamp benefits in connection with the sale of eligible food stamp items. By law, SNAP benefits cannot be exchanged or redeemed for cash or used to obtain items such as alcoholic

beverages, tobacco products, charcoal, calling cards, aluminum pans, metal skewers, vitamins, medicines, pet foods, or cleaning products. *See* 7 C.F.R. § 271.2. SNAP benefits also cannot be exchanged or redeemed for credit to be used at the retail location at a different time. *Id.; see also* 7 C.F.R. § 278.2(f). Additionally, SNAP benefits are for the personal consumption of the intended recipients and are not permitted to be used for commercial purposes. Federal law specifies that a purchase made using food stamp benefits must be tax exempt.

21. In 1997, the SNAP in Franklin County, Ohio, transitioned to electronic benefit distribution. *See* 7 C.F.R. § 274.1(b)(1). Since the conversion, SNAP benefits are available to individual recipients via the "Ohio Direction Card." Each authorized SNAP recipient is issued a unique Ohio Direction Electronic Benefits Transfer card ("EBT card") that contains an account number and an encrypted Personal Identification Number. SNAP benefits are downloaded monthly to the individual's EBT card. Only the SNAP recipient, whose name appears on the EBT card, or an authorized family member on record with the State of Ohio, may possess and/or use the EBT card.

22. The SNAP's electronic payment system is operated through a contract between the USDA-FNS and the State of Ohio. The State of Ohio maintains a primary service contract with Affiliated Computer Services ("ACS") located in Dallas, Texas. When a SNAP recipient "swipes" an EBT card for a purchase at an authorized retailer, the recipient's SNAP benefit "money" is electronically debited from the EBT card and credited to the authorized retailer's account.

23. In order to access the benefits on the EBT card to pay for authorized purchases, retailers utilize Point of Sale, or credit card terminals located in their retail location, to process the customer's authorized SNAP purchases. As the designated contractor, ACS settles or reconciles

7

each authorized retailer's EBT card charges at the end of the ACS business day.   An Automated Clearing House file is transmitted to the ACS bank.   This prompts the ACS bank to send the value of the redeemed SNAP benefits into the authorized retailer's bank account(s), designated to receive SNAP reimbursement for the EBT card transactions.

24. The EBT card is an "access device" within the meaning of 18 U.S.C. § 1029(e)(1), in that it is a card that can be used to obtain "goods, services, or any other thing of value," and, in this case, eligible food items under the Food Stamp Act.

**B.     The Investigation**

25. Based upon their investigation, USDA-OIG Special Agent Robert Springer and FBI Special Agent Jeffrey Rees have determined that Abdurahim Nuriso and/or Hassan Nuriso through Towfiq Market have committed fraud against the SNAP program by allowing customers to use their SNAP EBT cards to purchase prohibited items, trade benefits for cash, and/or pay down credit accounts at Towfiq Market.

26. During the course of the investigation, investigators have worked with several cooperating witnesses ("CWs"), who have proven to be credible and reliable, to conduct a series of SNAP transactions at Towfiq Market.

27. Using controlled USDA-OIG EBT cards, the CWs visited Towfiq Market and were allowed to make a variety of prohibited transactions, including the following transactions on or about the dates listed below.

28. On November 18, 2010, CW-1 went to Towfiq Market and used SNAP benefits to purchase unauthorized items, including a bottle of shampoo and a $5.00 calling card.   Abdurahim Nuriso was present during the transaction.

29. On November 30, 2010, CW-1 went to Towfiq Market and used SNAP benefits to

purchase unauthorized items, including a stainless steel scrubber and loaded $10.00 in long distance minutes to a controlled USDA-OIG cell phone through a computer terminal located inside the store. Abdurahim Nuriso was present during the transaction.

30. On December 20, 2010, CW-1 went to Towfiq Market and used SNAP benefits to purchase unauthorized items, including two packages of Motrin, three stainless steel scrubbers, a bottle of bleach, and a bottle of dish detergent. Abdurahim Nuriso was present during the transaction.

31. On January 6, 2011, CW-1 went to Towfiq Market and used SNAP benefits to purchase unauthorized items, including paper plates, a toothbrush, a bottle of baby oil, and a bottle of baby shampoo. Abdurahim Nuriso was present during the transaction.

32. On January 24, 2011, CW-1 went to Towfiq Market and asked to exchange SNAP benefits for calling cards. Abdurahim Nuriso advised CW-1 that he could not sell CW-1 the calling cards in exchange for SNAP benefits because he thought the FBI was watching them.

33. On February 3, 2011, CW-1 went to Towfiq Market and attempted to buy unauthorized items using his/her SNAP EBT card. Abdurahim Nuriso advised CW-1 that he could not do it because he was being watched. Instead, Abdurahim Nuriso wrote CW-1's name in what appeared to be a ledger book and extended CW-1 in-store credit for the items CW-1 bought.

34. On February 16, 2011, CW-1 met with Abdurahim Nuriso at Towfiq Market and attempted to pay off his/her credit tab using his/her SNAP EBT card. Abdurahim Nuriso advised CW-1 that he could not do it because the government was watching all Somalis.

35. On April 19, 2011, CW-1 went to Towfiq Market. While at the store, Abdurahim Nuriso confronted CW-1 about working with police and advised CW-1, "You come in here with

9

a camera, I am gonna kill you."

36. On February 28, 2011, investigators spoke with CW-2 who advised that he/she regularly saw customers selling SNAP benefits for United States currency at Towfiq Market.

37. On March 11, 2011, investigators spoke with CW-2 again and learned that Towfiq Market recently had obtained a desktop computer that CW-2 believed was being used to store the names and amounts individuals were maintaining in credit for selling their SNAP benefits in Towfiq Market.  CW-2 advised that Abdurahim Nuriso and Hassan Nuriso were no longer using notebooks to record the individuals who were using SNAP benefits in the store.

38. On April 30, 2014, CW-2 went to Towfiq Market and used SNAP benefits to purchase unauthorized items, including six prepared meat cakes.  Abdurahim Nuriso was present during the transaction.

39. On May 8, 2014, investigators spoke with CW-2, who advised that Abdurahim Nuriso and other employees at Towfiq Market, were paying customers to allow the market to use their SNAP benefits to purchase formula and milk at other stores for the stock at Towfiq Market. CW-2 further advised that if customers came into Towfiq Market with such items and the corresponding receipts, Abdurahim Nuriso would pay them in United States currency for the purchases.

40. On May 14, 2014, CW-2 went to Towfiq Market and used SNAP benefits to conduct two unauthorized transactions.  In the first transaction, CW-2 purchased unauthorized items, including four prepared meat pies.  In the second transaction, CW-2 purchased unauthorized items, including hair oil, Tide laundry detergent, and three bars of Irish Spring soap. Abdurahim Nuriso was present during the transactions.

41. On May 23, 2014, CW-2 went to Towfiq Market and used SNAP benefits to

purchase unauthorized items, including three bars of soap, one jar of hair treatment/conditioner, and one bottle of liquid laundry detergent. CW-2 received $30.00 in United States currency and paid his/her in-store credit. Abdurahim Nuriso was present during the transaction.

42. On June 18, 2014, CW-2 went to Towfiq Market and used SNAP benefits to purchase unauthorized items, including prepared food items, and to pay off his/her in-store credit. After "paying off" the credit in the store, CW-2 noticed that Abdurahim Nuriso appeared to type on a computer located under the store counter.

43. On September 2, 2014, CW-2 went to Towfiq Market and used SNAP benefits for an unauthorized purpose. Specifically, CW-2 received $20.00 in United States currency and placed $130.00 of his/her SNAP benefits on his/her credit account for use later in Towfiq Market. Abdurahim Nuriso was present during the transaction. CW-2 advised that Abdurahim Nuriso charged CW-2 an additional $20.00 against the actual value of his/her SNAP benefits as a fee for the United States currency and credit.

44. On September 30, 2014, CW-2 went to Towfiq Market and used SNAP benefits for an unauthorized purpose. Specifically, CW-2 received $100.00 in United States currency and placed a $300.00 credit on his/her credit account at Towfiq Market. The $100.00 in United States currency was deducted from the credit account that he/she previously had established using his/her SNAP benefits. Abdurahim Nuriso was present during the transaction.

45. On November 20, 2015, CW-2 went to Towfiq Market and used his/her credit account to purchase laundry detergent, a package of soap, and assorted food items. CW-2 established and maintained a credit account at Towfiq Market based on the SNAP benefits that he/she previously had exchanged for credit at Towfiq Market. Following the transaction, Abdurahim Nuriso provided CW-2 with a balance of the credit account using a computer inside

11

the store.

46. On September 19, 2014, CW-3 went to Towfiq Market and used SNAP benefits for an unauthorized purpose. Specifically, CW-3 exchanged $234.98 in SNAP benefits for United States currency. As part of the deal, CW-3 left a controlled SNAP EBT card with Abdurahim Nuriso. Abdurahim Nuriso advised CW-3 that he would have a woman come in and use the card, and then he would pay CW-3 later.

47. On September 20, 2014, CW-3 returned to Towfiq Market and obtained $120.00 in United States currency and his/her controlled SNAP EBT card back from Abdurahim Nuriso. A review of the SNAP EBT card by investigators revealed that it was used at a Kroger grocery store located at 3600 Soldana Boulevard in Columbus, Ohio. The related transaction totaled $271.74 and consisted of $234.98 from CW-3's controlled SNAP EBT card and the balance from another person's SNAP EBT card.

48. On June 1, 2018, CW-4 met with Abdurahim Nuriso at Towfiq Market, presented his/her SNAP benefits card, and received $30.00 in credit at Towfiq Market.

49. CW-4 returned to Towfiq Market on June 5, 2018, and used his/her SNAP benefits to pay for the $30.00 credit extended on June 1, 2018. Abdurahim Nuriso was present during this unauthorized transaction.

50. On June 21, 2018, CW-4 returned to Towfiq Market and used SNAP benefits to purchase a box of beauty cream, an unauthorized item. Abdurahim Nuriso was present during the transaction.

51. On July 2, 2018, CW-4 went to Towfiq Market and used SNAP benefits to purchase a music humidifier, an unauthorized item. Abdurahim Nuriso was present during the transaction.

52. On July 11, 2018, CW-4 went to Towfiq Market and used SNAP benefits to

purchase unauthorized items, including a teapot and a coffee pot and received $43.69 in credit. Abdurahim Nuriso was present during the transaction.

53. On July 19, 2018, CW-4 went to Towfiq Market and used SNAP benefits to purchase unauthorized items, including a tea set, an electric incense burner, and Dove body wash, and for a payment on the $43.69 in credit extended on July 11, 2018. Abdurahim Nuriso was present during the transaction and knew the amount owed by CW-4.

54. On July 26, 2018, CW-4 went to Towfiq Market and used SNAP benefits to purchase a tea set, an unauthorized item. Abdurahim Nuriso was present during the transaction.

55. On August 1, 2018, CW-4 went to Towfiq Market and used SNAP benefits to purchase charcoal used for a hookah pipe, an unauthorized item. Abdurahim Nuriso was present during the transaction.

56. On August 15, 2018, CW-4 went to Towfiq Market and used SNAP benefits to purchase unauthorized items, including shampoo, household cleaner, a car charger, and received $20.00 in United States currency. Abdurahim Nuriso was present during the transaction.

57. On August 27, 2018, CW-4 went to Towfiq Market and used SNAP benefits to purchase unauthorized items, including shampoo, hookah fuel, a tea set, and scouring pads. Abdurahim Nuriso was present during the transaction. CW-4 also asked for $20.00 in United States currency, but Abdurahim Nuriso advised that since it was the end of the month, he did not have any money.

58. On September 10, 2018, CW-4 went to Towfiq Market and used SNAP benefits to purchase unauthorized items, including dish soap, hookah fuel, henna oil, and a USB charger. Abdurahim Nuriso was present during the transaction. CW-4 again asked for United States currency. Abdurahim Nuriso advised CW-4 that he would give him/her money the next time

he/she was in the store.

59. On September 17, 2018, CW-4 went to Towfiq Market and used SNAP benefits to purchase unauthorized items, including dish soap, body wash, and a purse. Abdurahim Nuriso was present during the transaction. CW-4 also received $20.00 in United States currency.

60. During the Food Stamp Program Application process, Towfiq Market characterized itself as a medium-sized grocery. Investigators know that Towfiq Market's customer base is primarily of African descent. During the course of the investigation, agents reviewed SNAP transactions at Towfiq Market and compared them to SNAP transactions processed at five similarly situated, medium-sized groceries.

61. Based upon this evaluation, investigators determined that from October 2010 to September 2018, similarly situated stores processed an average of $30,002.05 in SNAP benefits per month. During that same period, Towfiq Market processed a total of $78,251.85 in SNAP benefits per month. Therefore, investigators determined that, on average, 61.66% of Towfiq Market's reimbursements were fraudulent.

62. From October 2010 to September 2018, Towfiq Market processed a total of $7,512,177.99 in SNAP benefits. Investigators determined that since approximately October 2010, Towfiq Market fraudulently has received in excess of $4,632,008.95 in redeemed SNAP benefits.

63. Since at least 2013, Towfiq Market has received SNAP reimbursements in Cooper State Bank Account No. xxxx0003. On or about April 17, 2015, Cooper State Bank transitioned to a new name, First Merchants Bank. Towfiq Market's account number stayed the same. From at least January 1, 2018, through at least September 30, 2018, Towfiq Market's SNAP benefits were deposited into this account. Specifically, since at least January 1, 2018, at least $461,090.48

in SNAP reimbursements were deposited into First Merchants Bank Account No. xxxx0003. Investigators have determined that as of September 2018, at least $323,585.18 of the SNAP reimbursements deposited into First Merchants Bank Account No. xxxx0003 were illegally acquired and redeemed SNAP benefits.

64. On or about March 15, 2017, Hassan Nuriso, dba Towfig Market, LLC, opened another account for Towfiq Market, that is, US Bank Gold Business Checking Account No. xxxx1260. In or about April 2017, this account also began receiving reimbursements from SNAP. Since at least February 1, 2018, at least $248,239.03 in SNAP reimbursements were deposited into US Bank Account No. xxxx1260. Investigators have determined that as of September 2018, at least $176,687.76 of the SNAP reimbursements deposited into US Bank Gold Business Checking Account No. xxxx1260 were illegally acquired and redeemed SNAP benefits.

**C.     The Defendants**

65. On or about November 7, 2018, United States Magistrate Judge Kimberly A. Jolson authorized federal search and seizure warrants for several locations, including:

    a. Towfiq Market located at 3655 Sullivant Avenue, Columbus, Ohio (2:18-mj-828);

    b. The residence of Abdurahim Nuriso located at 1772 Doe Run, Columbus, Ohio (2:18-mj-827);

    c. The residence of Hassan Nuriso located at 3569 Quickwater Road, Grove City, Ohio (2:18-mj-830);

    d. The contents of US Bank Gold Business Checking Account No. xxxx1260, up to the amount of $176,687.76 (2:18-mj-829); and

    e. The contents of First Merchants Bank Business Checking Account No.

xxxx0003, up to the amount of $323,585.18 (2:18-mj-825).

66. On or about November 9, 2018, agents with the USDA-OIG and FBI executed these search and seizure warrants. During the execution of the warrants, investigators located and seized, among other things:

   a. A total of $10,355.00 in United States currency from Towfiq Market located at 3655 Sullivant Avenue, Columbus, Ohio, (Defendant 1);

   b. A total of $757.00 in United States currency from the residence located at 1772 Doe Run, Columbus, Ohio (Defendant 2);

   c. A total of $18,650.00 in United States currency from the residence located at 3569 Quickwater Road, Grove City, Ohio (Defendant 3);

   d. A total of $50,624.75 from US Bank Gold Business Checking Account No. xxxx1260 (Defendant 4); and

   e. A total of $164,594.47 from First Merchants Bank Business Checking Account No. xxxx0003 (Defendant 5).

67. Based upon the foregoing facts, the United States asserts that the defendants are subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(C) because they constitute or are derived from proceeds traceable to one or more violations of 18 U.S.C. § 1029 and/or an offense constituting specified unlawful activity, said activity being violations of 18 U.S.C. § 641, 7 U.S.C. § 2024(c), and/or a conspiracy to commit such offenses, in violation of 18 U.S.C. § 371; and the defendants are subject to forfeiture under 7 U.S.C. § 2024(e) because they represent nonfood items, moneys, negotiable instruments, securities, or other things of value that were furnished in exchange for SNAP benefits, or anything of value obtained by use of an access device in violation of 7 U.S.C. § 2024(c).

## **CLAIM FOR RELIEF**

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendants and to retain the same in its custody subject to further order of the Court;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendants to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c) the forfeiture of the defendants to the United States be confirmed, enforced, and ordered by the Court;

(d) the Court thereafter order the United States to dispose of the defendants as provided by law; and

(e) the Court award the United States all other relief to which it is entitled, including the costs of this action.

    Respectfully submitted,

    BENJAMIN C. GLASSMAN
    United States Attorney

    s/Deborah D. Grimes
    DEBORAH D. GRIMES (0078698)
    Assistant United States Attorney
    Attorney for Plaintiff
    221 East Fourth Street, Suite 400
    Cincinnati, Ohio 45202
    (513) 684-3711 / Fax (513) 684-6385
    Deborah.Grimes@usdoj.gov

## VERIFICATION

I, Robert J. Springer, Jr., hereby verify and declare under the penalty of perjury that I am a Special Agent with the United States Department of Agriculture, Office of Inspector General, and that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

5/6/19
Date

ROBERT J. SPRINGER, JR., Special Agent
United States Department of Agriculture
Office of Inspector General

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
Ten Thousand Three Hundred Fifty-five and 00/100 Dollars ($10,355.00) in United States Currency, et al.

**(b)** County of Residence of First Listed Plaintiff    Franklin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Franklin
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Deborah D. Grimes, Assistant United States Attorney
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202     (513) 684-3711

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and/or 7 U.S.C. § 2024(e)
Brief description of cause:
Forfeiture

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 05/06/2019

SIGNATURE OF ATTORNEY OF RECORD: s/Deborah D. Grimes

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____